GARY M. RESTAINO
United States Attorney
District of Arizona
MONICA E. RYAN
NATHANIEL J. WALTERS
Assistant U.S. Attorney
United States Courthouse
405 W. Congress Street, Suite 4800
Tucson, Arizona 85701
Telephone: 520-620-7300
Monica.Ryan@usdoj.gov
Nathaniel.Walters@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | CR-24-00355-PHX-SPL |
| Plaintiff, | GOVERNMENT'S CLOSING ARGUMENT FOR MOTION HEARING ON DEFENDANT'S MOTION TO SUPPRESS STATEMENTS |
| vs. | |
| Larry Edward Brown, Jr., | |
| Defendant. | |

The United States, through undersigned counsel, respectfully submits this closing argument for the Motion Hearing held on December 19, 2024, and in support of its Response in Opposition to Defendant Larry Edward Brown Jr.'s (Brown) Motion to Suppress (Doc. 51). As demonstrated by the evidence adduced at the hearing, Brown was not in custody, nor were his spontaneous statements made in response to any questioning. Therefore, Defendant's motion should be denied.

**I.    No *Miranda* Violation Because Brown Not in Custody and Brown's Statements Not Made in Response to Questioning**

Brown's statements in his hospital room — "I am a Use of Force Instructor, I should know better, I teach this"—were spontaneous statements, not in response to questioning from anyone, thus, they are admissible.

It is well-settled that a suspect must be advised of his Miranda rights prior to custodial interrogation. *Dickerson v. United States*, 530 U.S. 428, 444 (2000). Spontaneous statements volunteered by a suspect in absence of Miranda warnings, however, are admissible because they are not a result of custodial interrogation. *United States v. Sherwood*, 98 F.3d 402, 409 (9th Cir. 1996).

As demonstrated by the witness testimony at the motion hearing, the defendant was not in law enforcement custody, and there was no interrogation that elicited the statements that he now seeks to suppress. Testimony from multiple witnesses confirms that Brown was not in custody. Brown never asked either of the FBI agents at the hospital that day if he was under arrest or if he was free to leave. (12/19/24 Transcript (Tr). at 30, lines 6-11; SA Hannah); (Tr. at 166, lines 14-20, SSA Roberts). Special Agent Hannah testified that she did not have enough evidence to arrest Brown that day. (Tr. at p. 30, lines 17-19). IRS-CI Supervisory Special Agent Tina DeAndre transported Brown to the hospital, not the FBI. (Tr. at 30, lines 12-16; SA Hannah); (Tr. 125 at lines 4-7, SSA DeAndre). Brown was not handcuffed (Tr. at 132, lines 3-11, SSA DeAndre); (Tr. at 99, lines 6-11; Miller). In fact, Brown was never in custody that day, and was not arrested until months later: (Tr. 132 at lines 23-25, SSA DeAndre).

Nor were Brown's statements made in response to questioning. Special Agent Hannah testified that he repeated the statements "I am a Use of Force Instructor, I should know better, I teach this," like a mantra to himself, and not in response to any questions from her or any other law enforcement officer. (Tr. at 19, lines 3-16). In fact, the FBI did not ask Brown any questions about the shooting while at the hospital that day. (Tr. at 30, lines 20-22; SA Hannah). Further, Special Agent Hannah testified that it was never her intention to question Brown at the hospital, instead her plan was to have the defendant come to the FBI office for an interview. (Tr. at 30, lines 17-19; Tr. at 20, line 16 through p. 21, line 4).

It is undisputed that Brown was not in law enforcement custody on August 17, 2023. Brown admits in his brief (Doc. 50 at page 6) that he was not under arrest but claims he

was not free to leave due to the nature of his medical treatment. If Brown felt he could not leave, it was not because of the FBI. As noted above, Brown's former supervisor from IRS-CI drove him from the range to the hospital, not the FBI. Further, both FBI agents left the hospital more than an hour prior to Brown's discharge at 6:14pm. (Exhibit 2 at 2 (agents left hospital at approximately 4:40pm); Exhibit 25 at 9, Bates 01-0052 (note of Brown discharge)).

The Court must find both that the defendant was in custody and that his statements were made in response to interrogation to find a *Miranda* violation. Neither ground for suppression exists in this case. Instead, Brown's statements were spontaneous, and are therefore admissible because they were not the result of custodial interrogation.

**II.     Brown's Statements Were Voluntary**

Brown also argues if the Court finds that the defendant made the statements, it should still suppress them because they were made involuntarily. This argument is not supported by the facts in the record.

The question of voluntariness must be determined from a consideration of the totality of the circumstances. *Withrow v. Williams*, 507 U.S. 680, 693 (1993); *United States v. Preston*, 706 F.3d 1106, 1113 (9th Cir. 2013). The evidence at the hearing about Brown's employment, mental state, and physical condition all support a finding that his will was not overborne, and his statements were voluntary. For example, Brown was able to respond appropriately to questions from medical personnel, who recorded that he was "awake and alert." (Exhibit 4, Page 11, Bates 01-0054). Although he had previously declined anxiety medication, Brown asked for it after learning that Agent Bauer had died. (Exhibit 4, p. 12, Bates 01-0055). Brown typed Special Agent Hannah's phone number into his cell phone, then called her cell phone to confirm he had entered it correctly. (Tr. at 19, line 17 through p. 20 line 8; SA Hannah). Brown was able to calmly discuss the storage of his personal firearms at home and decline FBI's offer to take them for safekeeping. (Tr. at 24, line 24 through 25, line 8; SA Hannah). Brown was also able to accurately recall and write down details like his date of birth and his government-issued

cell phone number. (Exhibit 25, p. 58, Bates 01-0101). These are the actions of someone who clearly understands what is going on around him, who is able to understand and respond appropriately to others, not of a person whose statements were made involuntarily.

When a confession or admission is challenged, the government need only establish voluntariness by a preponderance of the evidence. *Lego v. Twomey*, 404 U.S. 477, 489 (1972); *United States v. Tingle*, 658 F.2d 1332, 1335 (9th Cir. 1981). That standard is clearly met on this record.

Coercive police activity is "a necessary predicate" to finding a confession involuntary. *United States v. Kelley,* 953 F.2d 562 (9th Cir. 1992) (citing *Colorado v. Connelly,* 479 U.S. 157, 164 (1986). The hearing produced no evidence of coercive police activity, nor any evidence of a causal connection between police conduct and the defendant's confession, because no such conduct occurred in this case.

**III. Conclusion**

Based on the foregoing, the United States respectfully requests that the Court deny Defendant's Motion to Suppress Statements in its entirety.

Respectfully submitted this 8th day of January, 2025.

> GARY M. RESTAINO
> United States Attorney
> District of Arizona
>
> *s/Monica E. Ryan*
>
> MONICA E. RYAN
> NATHANIEL J. WALTERS
> Assistant U.S. Attorneys

Copy of the foregoing served electronically or by other means this 8th day of January, 2025, to:

All ECF Recipients